IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN ALEXANDER WAGNER, #Y27431, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 25-cv-00717-SMY |
| ) | |
| R. COMPARIN, ) | |
| M. MOLDENHAUER, MS. CRANE, ) | |
| WEXFORD HEALTH SOURCE, INC., ) | |
| ANTHONY WILLS, TIMOTHY WEAVER, ) | |
| CLAYTON STEPHENSON, and ) | |
| JOHN DOE (Correctional Lieutenant), ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff John Alexander Wagner, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He claims treatment was delayed and denied for his serious medical conditions and seeks monetary damages, a Temporary Restraining Order ("TRO"), and preliminary injunctive relief (Docs. 1, 2).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): Plaintiff sustained

1

injuries to his back and hip in January 2018 (Doc. 1, p. 4; Doc. 2-2, p. 1). X-rays taken afterward showed nothing (Doc. 1, p. 4). Plaintiff was sent to an outside provider in Murphysboro in 2019 for an MRI (Doc. 2-2, p. 1). A doctor told Plaintiff he had bone deterioration in his spine and a treatment plan would be sent to the prison. However, no treatment was given and his symptoms got worse.

In 2023, after unsuccessfully seeking treatment for his back and spinal pain, Plaintiff fell down the commissary stairway when his left side became numb and painful and gave way (Doc. 1, p. 3). An officer sent Plaintiff to the medical unit in a wheelchair, where he was seen by Defendant Moldenhauer (Nurse Practitioner). Moldenhauer told Plaintiff he was fine and diagnosed his problem as psoriatic arthritis (Doc. 1, p. 4). Plaintiff refused to leave without medical treatment but departed when Moldenhauer threatened him with discipline. Plaintiff's numbness subsided but he was still injured and in pain.

When Plaintiff was back on his gallery, he told Defendant John Doe Correctional Lieutenant that he had just suffered a fall and that he had previously been seeking treatment without success for his back problems (Doc. 1, p. 12). Plaintiff asked Lt. Doe to call the medical department for him. Lt. Doe refused and threatened to transfer Plaintiff or move him to a location with worse conditions.

Between 2023 and 2024, Plaintiff suffered ongoing pain, spasms, and numbness. He put in "countless" sick call requests, letters to medical staff, and grievances (Doc. 1, p. 5). Plaintiff was finally sent to the Carbondale Hospital Brain and Spine institute at an unspecified date in 2024 where he saw Dr. Criste (Doc. 1, p. 4; Doc. 2-2, p. 2). An MRI showed Plaintiff had no discs left in his spine between L7 and L5 (Doc. 1, p. 4). The specialist told Plaintiff he would need surgery to correct the problem, but as an alternative, he could get epidural injections to his spine. Plaintiff

agreed in 2023 to have the injection (Doc. 1, p. 4). In a 2024 visit to Dr. Criste, Plaintiff learned Dr. Criste had scheduled him for the injection months earlier, but it was never done. Dr. Criste scheduled Plaintiff for the injection again, but Plaintiff was not told the date for that appointment (Doc. 1, p. 5).

As of April 2024, Plaintiff had been scheduled for numerous medical furloughs, but all had been cancelled. His symptoms had become worse, but Menard medical staff did nothing (Doc. 1, pp. 5-6). After submitting multiple requests, Plaintiff saw Moldenhauer in May 2024 (Doc. 1, p. 8). He asked for pain treatment because his symptoms prevented him from functioning and resting. He asked when he would be sent on a medical furlough for treatment. Moldenhauer refused to discuss these issues because the visit was only for Plaintiff's diabetes. When Plaintiff complained, Moldenhauer had him removed without giving him any treatment (Doc. 1, p. 8). Plaintiff saw Moldenhauer again in June 2024 but got no treatment.

In May 2024, Plaintiff was sent out to the brain and spine institute again for the worsening problems with his spine, back, and left hip and leg (Doc. 1, pp. 5-6; Doc. 2-2, p. 3). Plaintiff had also been experiencing numbness, pain, and spasms in his left arm and hand for a year. Those issues deteriorated so that he now has no strength in two of his fingers or the right area of his left hand, has numbness in the last three fingers, has no strength in his wrist and forearm, and has constant pain up to his left elbow (Doc. 1, pp. 5-6). At that May 2024 appointment, Plaintiff had an MRI that showed damage to his C1 and C3 vertebrae that needed surgery; however, no procedure was scheduled. The nurse practitioner opined that Plaintiff could also have carpal tunnel and scheduled a test. However, his scheduled furloughs continued to be cancelled (Doc. 1, p. 6).

In June 2024, Plaintiff sought treatment from Defendant Dr. Comparin (Menard doctor/administrator) (Doc. 1, p. 6). He requested the doctor give him the medications he had

3

formerly received while in his home state of Maryland, or to increase his 400 mg. of Neurontin, until he was able to have surgery and the epidural injections. Plaintiff also asked Comparin for a medical permit for a double mattress or a new back brace to help his spinal injuries. He told Comparin that the outside surgeon and nurse practitioner who conducted his MRI tests determined he needed surgery and pain management for his spinal condition. Comparin denied these requests and sent Plaintiff away with no treatment (Doc. 1, pp. 6-7).

Plaintiff saw Comparin again on August 8, 2024, explaining his pain, spasms, and numbness had become unbearable over the last year while his medical furloughs had been cancelled. Plaintiff asked to be scheduled for surgery and pain management injections. Again, Comparin provided no treatment. Plaintiff filed an emergency grievance.

When the August grievance went unanswered, Plaintiff filed another emergency grievance on September 23, 2024 against Comparin, Moldenhauer, the Menard medical department, and Defendant Wexford Health Source, Inc. ("Wexford"). The warden determined it was not an emergency. The grievance was not answered, so in January 2025, Plaintiff filed grievances against Defendant Warden Wills and Defendant Grievance Counselor Weaver for failing to respond to his earlier grievances (Doc. 1, pp. 7-8). He appealed to the Administrative Review Board ("ARB") where Defendant Stephenson reviewed the matter (Doc. 1, p. 10). Wills and Weaver refused to respond to his grievances in retaliation for Plaintiff's grievances against them (Doc. 1, p. 12).

Plaintiff was finally sent to the outside hospital on January 23, 2025, where Dr. Criste administered the epidural injection to treat his spinal injuries (Doc. 1, p. 9). He warned Plaintiff that he would have pain and swelling which could last about 10 days when the Novocain wore off, and he should request Tylenol and ice when he returned to Menard. Dr. Criste's post-treatment orders were given to the transporting officer, who gave them to Moldenhauer. Plaintiff asked

4

Moldenhauer for Tylenol and ice when he began to feel pain. Moldenhauer became hostile and refused those requests, even after the officer showed him the specialist's instructions and Plaintiff explained he was only asking for what the doctor had ordered (Doc. 1, pp. 9-10).

On March 24, 2025, Plaintiff was sent to a Carbondale neurologist, who he believed sent a diagnosis and treatment plan to Menard medical providers (Doc. 2-2, p. 4). Plaintiff continued to submit medical requests but had not received any further treatment as of the date he submitted his Complaint (April 17, 2025) (Doc. 1, p. 12). Defendant Crane (Menard Medical Dept.) is responsible for arranging outside specialist care and has not done so (Doc. 1, p. 13). Plaintiff is still suffering tremendous and excruciating pain, as well as severe spasms, numbness, "locking" of his hands and fingers, difficulty walking, and reduced range of motion (Doc. 1, p. 13; Doc. 2-2, p. 4). He fears he risks permanent disability without treatment.

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

> Count 1: Eighth Amendment deliberate indifference to serious medical needs claim against Comparin, Moldenhauer, and Crane for failure to provide Plaintiff with evaluation and treatment for his back, spine, neck, arm, and hand injuries/conditions.
>
> Count 2: Eighth Amendment deliberate indifference to serious medical needs claim against Wills, Weaver, Stephenson, and Wexford for failing to take disciplinary or other actions against the medical defendants who refused to treat Plaintiff's medical conditions.
>
> Count 3: First Amendment retaliation claim against Wills, Weaver, and Moldenhauer for denying Plaintiff medical treatment because of his grievances and complaints.
>
> Count 4: First Amendment retaliation claim against the John Doe Lieutenant for threatening Plaintiff because he complained and filed grievances.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be

5

considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

### Discussion

### Count 1

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* An objectively serious condition includes a condition that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).

The allegations in the Complaint are sufficient for Plaintiff to proceed on the deliberate indifference claim in Count 1 against medical providers Comparin, Moldenhauer, and Crane.

### Count 2

Plaintiff's deliberate indifference to medical needs claim against Wills, Weaver, Stephenson, and Wexford is premised on their failure to remedy his complaints over the alleged lack of treatment by Menard medical providers (Doc. 1, pp. 15). Plaintiff asserts that Wills improperly concluded Plaintiff's grievances were not emergencies. Wills and Weaver allegedly

6

denied or failed to respond to Plaintiff's grievances, and Stephenson reviewed Plaintiff's ARB appeals.

Grievance officers, supervisors, and officials who review grievance reports and appeals are ordinarily not liable in a civil rights action for failing to remedy the matters raised in the grievance. To be liable under § 1983, a defendant must be personally responsible for the violation of a constitutional right; review of a grievance does not amount to personal involvement. *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021); *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). Additionally, because grievance procedures are not constitutionally required, a prison official's failure to follow them does not violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992). Count 2 will therefore be dismissed against Wills, Weaver, and Stephenson.

As to the claim against Wexford, a corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004); *Jackson v. Ill. Medi-Car, Inc*., 300 F.3d 760, 766 n.6 (7th Cir. 2002). Plaintiff has not alleged that any medical providers employed by Wexford either acted or failed to act because of an official Wexford policy. As such, the Complaint fails to state a viable claim against Wexford, and Count 2 will be dismissed in its entirety.

**Count 3**

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g*., *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). The issue in a retaliation claim is whether the plaintiff suffered a deprivation that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating

factor" in the defendants' decision to take the retaliatory action. *See Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009); *McKinley v. Schoenbeck*, 731 F. App'x 511, 515 (7th Cir. 2018). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

In this case, Plaintiff alleges that Wills and Weaver retaliated against him for filing grievances, by refusing to answer his grievances. The failure to obtain responses to grievances does not amount to a material deprivation, and an ordinary prisoner engaging in litigation is not likely to be deterred by this conduct. Plaintiff's attached grievances demonstrate that the alleged retaliation did not stop him from pursuing this remedy (Doc. 1, pp. 19-36, 46-50). Wills and Weaver will therefore be dismissed from Count 3.

Plaintiff's assertion that Moldenhauer allegedly denied him medical care because he filed grievances and complaints sufficiently states a retaliation claim and will proceed in Count 3.

**Count 4**

Plaintiff alleges the John Doe Correctional Lieutenant threatened him with a transfer or a move to a worse housing unit after Plaintiff asked for medical treatment in 2023. A mere verbal threat of this nature, which was not carried out, does not amount to an adverse "action" and does not rise to the level of a constitutional violation. *See Hughes v. Scott,* 816 F.3d 955, 956 (7th Cir. 2016). Therefore, Count 4 and the John Doe Defendant will be dismissed from the case.

**<u>Injunctive Relief</u>**

Because the Complaint includes a request for injunctive relief, Anthony Wills, in his official capacity only as Warden of Menard Correctional Center, will remain as a defendant regarding this request. *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (holding

warden is proper defendant for injunctive relief claim as he would be responsible for ensuring that any injunctive relief would be carried out).

### Official Capacity Claims

Plaintiff raises claims against each defendant in his or her individual and official capacities. As noted above, the injunctive relief claims are properly brought against Warden Wills in his official capacity. However, Plaintiff's claims for monetary damages may only be pursued against state officials in their individual capacities. *Brown v. Budz*, 904 F.3d 904, 918 (7th Cir. 2005). Accordingly, the official capacity claims against the remaining individual defendants are dismissed without prejudice.

### Pending Motions

Plaintiff requests a TRO and Preliminary Injunction, ordering defendants to provide proper medical care to avoid further harm from his worsening spine, neck, and arm conditions (Doc. 2).

A TRO is an order issued without notice to the party to be enjoined that may last no more than 14 days. FED. R. CIV. P. 65(b)(2). A TRO may issue without notice *only* if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. FED. R. CIV. P. 65(b)(1). Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm before Defendants can be heard.

The Court **DEFERS** a decision on Plaintiff's Motion for Preliminary Injunction until Defendants have had an opportunity to respond and the Court has conducted a hearing on the motion. The hearing will be set by separate Order. **Defendants Comparin, Moldenhauer, Crane and Wills (in his official capacity) are ORDERED to respond to the motion in writing no**

9

**later than seven (7) days prior to the hearing.**

Plaintiff's Motion for Recruitment of Counsel (Doc. 4) is **DENIED** without prejudice. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). In determining whether to recruit counsel, the Court considers whether the *pro se* party has made reasonable efforts to secure counsel on his own and his ability to litigate the case on his own. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Here, Plaintiff has not established any efforts made to obtain counsel on his own. Moreover, at this early stage of the litigation, it is difficult to accurately evaluate the need for assistance of counsel, so the recruitment of counsel would be premature. S*ee Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel... cannot be gauged.").

If Plaintiff encounters difficulties in self-representation as this case proceeds, he may refile his motion seeking recruitment of counsel. If he chooses to renew his request, he should submit at least 3 rejection letters from attorneys to show that he has made reasonable efforts to obtain counsel on his own.

## Disposition

The Complaint states colorable claims in Count 1 against Comparin, Moldenhauer, and Crane; and in Count 3 against Moldenhauer. Counts 2 and 4, Defendants Weaver, Stephenson, Wexford, John Doe Correctional Lieutenant, and all claims against Wills in his individual capacity are **DISMISSED** without prejudice.

The Clerk shall prepare for R. Comparin, M. Moldenhauer, Ms. Crane, and Menard Warden Anthony Wills (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is

**DIRECTED** to mail these forms, a copy of the Complaint, a copy of the Motion for TRO/Preliminary Injunction (Doc. 2), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days**

11

after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  May 14, 2025**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.